The next matter, number 221938, President and Fellows of Harvard College v. Zurich American Insurance Company. At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning. Marshall Galinsky for the appellant. May it please the Court, if I could please reserve two minutes for rebuttal. Yes, you may. Thank you. The ruling below, Your Honors, presents an important question for this Court. Can an insurance company have actual, timely knowledge of a claim, factor that claim into the policyholder's premiums going forward, coordinate in the defense of the claim, yet refuse to cover the claim on the grounds that there was some problem in the notice that was provided to the insurance company? Well, can I get a few basic facts straight in my mind? You say that there was some problem with the giving of notice. There was no actual notice. I thought that was an established fact in this case, that the notice provision of the contract was not complied with. The notice provision in the contract, Your Honor, was complied with. It's just that the reporting component of that provision wasn't technically complied. But there was late notice. The reporting from the policyholders to the insurance company was late. Wait a second. I'm trying to establish a few facts here. All right? The reporting was late. I understand your argument that you say that actual notice is a substitute for notice under the policy. But before I get to that, this is a case that you chose to bring in the federal court. Is that correct, Mr. Lawrence? That's correct, Your Honor. It's a diversity case, and therefore we apply Massachusetts law. That's correct. So we're bound by the precedents of the Supreme Judicial Court of Massachusetts. Correct. And the Supreme Judicial Court of Massachusetts has held squarely, both in Charles T. Maine and subsequently in Tolensky, that notice provisions in a claims-made policy must be strictly complied with and that lack of prejudice is not a defense to the failure to comply with a notice provision. Is that the holding of Charles T. Maine? I have a slightly different gloss on the holding of Charles T. Maine. I would agree with Your Honor's description that prejudice is not an appropriate consideration under Charles T. Maine. That's correct. Excuse me. And we're bound to apply that rule. And, indeed, this court four times already has said that that is Massachusetts law since Charles T. Maine. We've said that in the Deluglio case. We've said it in the J.K. case. We've said it in Judge Hansen's decision. Yes, the Talcott case. And in the fourth case that is escaping me. But four times we've said that aren't we bound by those precedents? We can't change the SJC's law, and the law of the circuit says we can't change our interpretation of the SJC's law. I'd agree with that. And I think the key then is to understand the important and fundamental distinction that we have in this case compared to Charles T. Maine, Tanofsky, Grigano, Talcott, all of those. And to answer Your Honor's questions, and it's a very important point head on, I think it's critical to go to Charles T. Maine and to this court's interpretation of it as well. What the SJC said in Charles T. Maine is that if a claim is made against an insured, but the insurer does not know about it until a year later, the primary purpose of insuring claims rather than occurrences is frustrated. Yes. The Maine court was explaining why notice is so important in the claims made context, but it never suggested that you then have to analyze every individual case to see if there is or is not actual notice. It was explaining what the root purpose was for having a notice requirement in the policy and for strictly enforcing it. That's correct. In Charles T. Maine, the court said that the insurance company does not have the obligation to come forward with proof that it was prejudiced. That is the rule in the occurrence-based policies. That's true. But it did not rule, and no court has ever ruled, that where an insurance company does have actual timely knowledge of a claim, that its obligations under the insurance contract are excused. Well, that's just a subset of the universe of circumstances in which there could be a lack of prejudice, is you've got a policy that says, you, the insured, shall give us written notice of a claim made. And the insured, for whatever, it's an easy condition to imply war. These are commercial policies. The insured then doesn't comply with that. And when you say, well, the insurer knew because it read something in a newspaper or somebody mentioned it to her in a meeting, that seems to me to be a way of saying they weren't harmed by the lack of written notice, i.e., there was no prejudice. But Massachusetts law tells us lack of prejudice is not a reason for avoiding compliance with an insurance policy. Massachusetts law only says that in the context where the insurance company did not know about the claim. And this is a different situation. Now, it's not a common scenario. Excuse me. The SJC has never limited the no prejudice statement to the context that you suggest. It has said it consistently. And the Massachusetts Appeals Court have said it. And we've said it construing Massachusetts law. But it's never been extended to a fact situation like the one we have here. Well, suppose the claim had been made a day late. Okay? Your client sent in a written notice and it was a day late. You could stand before us and say, the Massachusetts courts have never held a case where you got it just a day late that there's no coverage. And that would be true. But we would say the general rule that lack of prejudice isn't a reason for ignoring compliance with the policy would still apply. So I'm just questioning whether looking at a case that has a general rule and then saying that while this circumstance is factually different, so the general rule doesn't apply, that's a bit of a reach when we're looking at state law and you've chosen to bring it in the federal court where our job isn't to create new state law. Well, I respectfully submit that this court would not be making new law because there's a parallel set of rules that apply. The occurrence rules? No, no, please. There is longstanding precedent in the Supreme Judicial Court dating back to 1980 that says repeatedly that where there has not been compliance with a condition in a contract that the court will not impose a forfeiture unless the purpose of that condition has been frustrated. And that's entirely consistent with what the court said in Charleston. The claim was decided and the SJC determined in effect that that body of law didn't affect claims made policies. What the SJC said in Charleston, Maine, was it followed that rule and it said in Charleston, Maine, that where an insurer does not know about a claim, the primary purpose of that condition is frustrated. They applied that rule. The SJC said exactly the same thing in Kanofsky. So turn to the requirement in the policy that your client gives a written notice. Okay. What's the purpose of that requirement that it gives written notice? The SJC has held in Charleston, Maine, and again in Kanofsky, and this court has acknowledged it, that the purpose of a claims made notice provision is fairness in rate setting. Well, they didn't even address, if you were going to distinguish Charleston, Maine, it didn't focus on the writing requirement. Here this policy, as I understand it, requires written notice and your client did not, even under your scenario, give written notice. That's, I correct the fact, your Honor's understanding of the facts. The policy in this case had multiple requirements within a notice reporting provision. There was a requirement for written notice and that requirement was met here. The requirement for written notice. Written notice was given timely? Yes. The requirement for written notice. Excuse me, that's your ambiguity argument, isn't it? Where you're now claiming that the notice provision is ambiguous and notice, isn't that in effect what this argument is? Well, no, I don't think you need to go there to answer Judge Kayotta's question. Oh, okay. Although we do say that in our briefs and I believe that's the case. You're puzzling me because if your client gave written notice timely, what are we even arguing about here? Because the policy provision, it's a notice and reporting provision, it's broken up into multiple paragraphs. The first two paragraphs say that written notice, and that's the language used in the policy, written notice must be given as soon as practicable, but it need not, that written notice, again, that's what the policy says, but written notice need not be provided until the claim rises to more than 50% of the retention underlying the policy. Here, the primary policy attached at $2.5 million, written notice was given to them right away. The excess policy sold by Zurich, that's at issue here, that's at $27.5 million above. And written notice was given to the insurance company, to Zurich, the excess company, in May of 2017. At that point in time, the loss was over $10 million away from the attachment point of Zurich. So it's clear that the written notice, as it was required, was provided far in advance of the deadline. Now, the policy goes on and has another requirement.